**UNITED STATES of America**

v.

**Brett Camil COTHAM et al.**

**Crim. A. No. SA73CR86.**

United States District Court,
W. D. Texas,
San Antonio Division.

July 5, 1973.

⊗⇒3.6(3)

William S. Sessions, U. S. Atty., Joel Conant, Asst. U. S. Atty., San Antonio, Tex., for plaintiff.

Cameron Cunningham, Austin, Tex., for Brett Camil Cotham and Mary Jane Ricks.

Alan Brown, San Antonio, Tex., for Robert Hilton Orozco.

## ORDER DENYING MOTION TO SUPPRESS

SPEARS, Chief Judge.

The above defendants in this cause stand charged by indictment with conspiring with six others, only one of whom is also named as a defendant, to possess marihuana with intent to distribute the same, in violation of 21 U.S. C. §§ 841(a)(1) and 846. The indictment alleges that the conspiracy began "on or before January, 1972" and continued "until on or about February 3, 1972". Seven overt acts are alleged in furtherance of the conspiracy, two of which pertain to co-conspirators who are either absent from this cause or who are not named as defendants. The last overt act is alleged to have occurred on February 3, 1972, in the Western District of Texas.

Defendants seek to suppress evidence of a quantity of marihuana which was seized pursuant to a search, with warrant, of the residence of Stuart Weinstein, a co-conspirator, in Charlottesville, Virginia, on February 22, 1973. Defendants contend that the search warrant was improperly issued. The Government, in response, contends that defendants have no standing to object to the search.

A hearing was held on June 1, 1973, at which time testimony was taken in regard to the issues of standing and the validity of the search warrant. The summary herein of the relevant testimony should be considered as the Court's findings of fact.

■ Defendants claim no possessory interest in the premises which were searched in Virginia. None of the defendants now before the Court were present at the time the search was conducted. Nevertheless, they contend that they have "automatic" standing to object to the search by reason of the holding in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Under that holding, when possession of

the fruits of a search at the time of the search is an essential element of the offense, the defendant has standing to object to the search, despite his absence from the premises, or his failure to assert a possessory interest in the premises searched or the property seized. The reasoning behind that holding was that to deny a defendant the opportunity to challenge a search because of his failure to claim a possessory interest in the contraband seized, a claim which, if made, would be self-incriminatory, was to offer the defendant a Hobson's choice.

Defendants assert that the offense with which they are charged is a possessory offense, and that therefore, they have standing to object to the search despite the fact that it occurred at a place in which defendants had no interest.[1]

The Supreme Court, in the recent case of Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973), questioned the continued vitality of the automatic standing rule of *Jones*, but expressly reserved decision on that point for a case in which the *Jones* rule is applicable. The Court pointed out that the self-incrimination dilemma which the *Jones* decision sought to eliminate is no longer present by virtue of the holding in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), which held that testimony given by a defendant to establish standing at a pre-trial hearing on a motion to suppress may not be used against that defendant at trial.

In the *Brown* case, however, the Court found that the circumstances which were present in *Jones* were absent. In *Brown*, two defendants were charged with transporting stolen goods and with conspiracy to transport stolen goods in interstate commerce. They sought to challenge the lawfulness of a seizure from the premises of a co-conspirator of merchandise which they had stolen, but which had been stored at the co-conspira-

tor's store. Neither defendant asserted a proprietary interest in either the goods seized or the co-conspirator's premises. The Court held that the facts of the case did not bring it within the purview of the *Jones* rule, and that defendants had no standing to object to search and seizure. The Court stated:

"In deciding this case, therefore, it is sufficient to hold that there is no standing to contest a search and seizure where, as here, the defendants: (a) were not on the premises at the time of the contested search and seizure; (b) had no proprietary or possessory interest in the premises; and (c) were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence *at the time of the contested search and seizure*." (Emphasis supplied). 411 U.S. at 229, 93 S.Ct. at 1569.

Defendants contend that *Brown* is not in point because, in the present case, "[t]he possession here 'to possess with intent to distribute' is a continuing possession." Defendants maintain that the Government is placing itself in a contradictory position when it asserts, on the one hand, that defendants had no possessory interest in the contraband, but on the other, seeks to prove possession as part of its case.

Had defendants been charged with *possession* of marihuana, they would have a more tenable argument, assuming the continued correctness of *Jones*. In the present case, however, they are charged not with possession but with conspiracy to possess. That being the case, the Court feels that Brown v. United States is controlling and that defendants lack standing. As set out above, when possession is not an *essential* element of the offense charged, there is no automatic standing.

It is well settled that conspiracy to commit an offense, and the substan-

1. At the hearing on the motion to suppress, Stuart Weinstein testified that only defendant Cotham had ever been in his residence, and that his only visit occurred on January 25, 1972, almost one month before the search took place.

tive offense itself, are separate and distinct crimes. *E. g.*, Callanan v. United States, 364 U.S. 587, 81 S.Ct. 321, 5 L. Ed.2d 312 (1961), United States v. Jacobs, 451 F.2d 530 (5th Cir. 1971), cert. denied, 405 U.S. 955, 92 S.Ct. 1170, 31 L.Ed.2d 231 (1972). It is immaterial to the conspiracy charge whether the substantive offense is committed or not. *E. g.*, United States v. Jacobs, 451 F.2d 530 (5th Cir. 1971). Of course, at least one overt act in furtherance of the criminal agreement must be shown in order to prove the offense. *E. g.*, United States v. Jacobs, supra, Roberts v. United States, 416 F.2d 1216, 1220 (5th Cir. 1969).

In the instant case, all of the overt acts enumerated by the Government are alleged to have taken place no later than February 3, 1972 (the date alleged as the termination date of the conspiracy), well before the date of the search. Thus, it is quite apparent that it is not essential to the Government's case to prove that defendants possessed the marihuana in question at the time of the seizure, and, therefore, the holding in Brown v. United States is squarely in point and the rule of Jones v. United States is inapplicable.

■ Even if the facts in this case were such as to bring it within the *Jones* rule, this Court would be very reluctant to acknowledge automatic standing, in light of the Supreme Court's statements in *Brown* concerning the effect of Simmons v. United States, supra, upon the necessity for the rule in *Jones*. There no longer being a reason for the rule, this Court can perceive no reason for applying it.

The Court, therefore, concludes: (a) that as a matter of law, defendants have no standing to object to the seizure of marihuana from the house of Stuart Weinstein, since they assert no possessory interest in the premises searched, and possession of the marihuana seized at the time of seizure by defendants is not an essential element of the offense with which they are charged; (b) that even

if possession of the marihuana at the time of seizure were an essential element of the Government's case, defendants would not have standing to object since they have asserted no possessory interest in either the premises or the contraband. The Court specifically finds that the "automatic" standing holding of Jones v. United States, supra, is no longer valid, in light of the procedural change brought about by Simmons v. United States. Under *Simmons*, defendants could have asserted a possessory interest at the hearing without fear of self-incrimination, thus obviating the necessity for the rule in *Jones*.

Notwithstanding defendants' lack of standing, the Court has considered their objections to the warrant, and finds them to be without merit.

■ Defendants have strongly maintained that the Virginia Justice of the Peace who issued the search warrant is not a judge of a state court of record, and, therefore, was not empowered to issue the warrant under the provisions of Rule 41(a), Fed.R.Crim.P., as then in effect. The Government, retreating from its former position, now agrees that a Justice of the Peace in Virginia is not a judge of a court of record, but maintains that this defect is immaterial, since the search was neither initiated, conducted, nor participated in by federal officers.

The evidence offered at the hearing indicates that the search warrant was obtained by Carl R. Deavers, Jr., an officer of the Virginia State Police, and that the warrant was executed by state officers only. Federal officers became involved only after the search was completed. There was no evidence that federal officers acted in a supervisory capacity, or that they instigated the search.

Defendants rely upon the holding in Navarro v. United States, 400 F.2d 315 (5th Cir. 1968), as authority for the proposition that evidence seized pursuant to a warrant issued by a state magistrate who is not a judge of a court of

record may not be admitted in a federal prosecution. The factual situation in Navarro, however, is clearly distinguishable from that in the instant case. In *Navarro*, federal agents joined in the "enterprise" shortly after the warrant was obtained, participated in the search, and directed the execution of the warrant. The contraband seized was placed immediately in federal custody, as was the defendant. The Court of Appeals found that the search was a "federal search" and, therefore, the failure of the issuing magistrate to be a judge of a court of record rendered the fruits of the search inadmissible. This finding was made by the Court of Appeals, sua sponte (but without saying so) despite the fact that no such issue was ever raised in the trial court. Nevertheless, in the present case there was no federal involvement until well after the search had been completed.

A case squarely in point, cited neither by defendants nor by the Government, is United States v. Coronna, 420 F.2d 1091 (5th Cir. 1970). In that case, city police officers obtained a search warrant from a judge of the Municipal Court in Fort Lauderdale, Florida, which is not a court of record. The warrant was executed by the city officers, without federal assistance or participation. Federal officers became involved only after the search was completed, and after the contraband (counterfeit money) was turned over to them by the city officers. The Court of Appeals found that the search was not a federal search because the federal officers did not participate therein and, upon that basis, distinguished *Navarro* and held the evidence admissible despite the issuance of the warrant by the Municipal Court judge.

The Court finds that the search in question was not a federal search and that United States v. Coronna, supra, is controlling. Accordingly, the fact that the Justice of the Peace who issued the warrant may not have been a judge of a court of record is of no consequence.

Defendants secondly contend that the warrant inadequately described the premises to be searched. The premises were described thusly:

A white framed dwelling located ⁹⁄₁₀ miles west of Rt. 743 on the north side of Rt. 657, Albemarle County, Virginia. The mailing address being Rt. 5, Box 113, Charlottesville, Virginia and occupied by Ellis Cohn.

At the hearing on the motion to suppress, Stuart Weinstein testified that he was present when the warrant was executed, and that the premises belonged to him, and that Ellis Cohn was his roommate. He also testified that the correct mailing address was Rt. 5, Box 133, not 113 as in the warrant, and that the house is located between two hundred and four hundred yards from the highway.

Defendant contends that the error in the enumeration of the box number and the failure of the warrant to specify that the house was located 300 yards from the road renders the warrant fatally defective. There is no contention made that the wrong premises were searched.

It is well established that an error in the description of the premises to be searched is not automatically a fatal defect, e. g., United States v. Melancon, 462 F.2d 82 (5th Cir.), cert. denied, 409 U.S. 1038, 93 S.Ct. 516, 34 L.Ed.2d 487 (1972). Likewise, the generally accepted standard for judging the sufficiency of a description contained in a search warrant is whether the officers armed with the warrant can, with reasonable effort, ascertain and identify the place intended, e. g., Steele v. United States, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925), accord, United States v. Melancon, supra, 462 F.2d at 93.

In the present case, the officer who made the affidavit also executed the warrant. He had been to the residence prior to making the affidavit. The officer testified that the house was located in an area of scattered dwellings, and

that the nearest building was approximately 100 yards away. Under these facts, the Court feels that the description was sufficient. To require a more detailed description in this case would serve no purpose.

■■ Appellant also maintains that the affidavit[2], even when coupled with sworn testimony which was presented to the magistrate, was insufficient to demonstrate probable cause. In particular, he contends that there is nothing in the warrant to indicate that the affiant's named informer, Lemay, was reliable; and that the information contained in the affidavit was "stale," i. e. that it did not reflect probable cause at the time the warrant was issued.

The Court, recognizing that an affidavit for search warrant is not to be judged by the hypertechnical niceties of common-law pleading, but by a common-sense interpretation, finds that the affidavit clearly sets forth probable cause. In particular, the informant Lemay's reliability is corroborated by the remaining information which the affiant received from other sources, including the unnamed informant. While the unnamed informant's information concerning the fall of 1971 might not have demonstrated probable cause at the time the warrant was issued, it nevertheless acted to corroborate Lemay's reliability. Likewise, Lemay's statement that he had made purchases of marihuana four times "during the last month," would provide probable cause to believe that marihuana was on the premises at the time the warrant was issued.

2. The relevant portion of the affidavit reads as follows:

"The material facts constituting public [sic] cause for issuance of the warrant are: Ellis B. Cohn of Rt. 5, Box 113, Charlottesville, Virginia was named in an anonymous letter mailed to the Drug and Narcotics authorities in the summer of 1971 as a large supplier of illegal drugs in the Charlottesville, Virginia area.

This letter stated that Cohn was receiving five (5) to fifteen (15) pounds of hashish from Germany twice a month through the mail and the post office employee delivering mail to Cohn's home at Rt. 5, Box 113, Charlottesville, Virginia informed the undersigned that Cohn has received at least four (4) packages from overseas within the last two months.

Thomas Michael Lemay was apprehended on February 5, 1972 in the City of Virginia Beach, Virginia by the Virginia Beach Narcotic Squad in the possession of a quantity of marijuana. The subject stated to the undersigned that he purchased this marijuana from Ellis Cohn at Cohn's home, a white framed dwelling located 9/10 mile west of State route 743 on the north side of State route 657 in Albemarle County, the mailing address being Route 5, Box 113 Charlottesville, Virginia on Tuesday, February 1, 1972.

Detective J. G. Malesky of the Virginia Beach Narcotic Squad informed the undersigned [Carl Deavers, Jr., Investigator, Virginia State Police] that the aforesaid subject, Thomas Lemay was a known distributor of drugs and narcotics in Virginia Beach. This arrested subject also stated to the undersigned that he had made at least four (4) purchases of a quantity of marijuana in the aforesaid home in Albemarle County Virginia during the last month and that Cohn told him that he, Cohn, had at least 200 pounds of marijuana. These purchases were made from Rod Wilson and Ellis Cohn. Cohn was an associate of Barry Quelland, who was convicted in the City of Charlottesville, Virginia for possession in excess of $30,000 worth of marijuana, hashish, and lysergic diethylamide (LSD) being illegal drugs. Barry Quelland made a statement to the undersigned in which Quelland named Cohn and Wilson as two of the largest distributors of illegal drugs in the Charlottesville, Virginia area. A proven reliable source stated he has personal knowledge that Cohn distributed twenty (20) pounds of marijuana in the Fall of 1971. This source has given information six times in the past month which led to the arrest of drug violators and the confiscation of a quantity of illegal drugs. This source has directed police officers to the location of fugitive felons who were then apprehended. Special Agent Pullen, U.S. Customs advised the undersigned that Mark Spaulding had carried $17,000 by airplane from Dulles Airport to Texas for Rod Wilson on Thursday, February 3, 1972. This was payment for a quantity of drugs purchased. Cohn advised Thomas Lemay on February 3, 1972 that he would not sell any marijuana to him because Wilson was questioned by federal authorities at the Dulles airport in reference to Spaulding's visit to Texas, but to contact him to make arrangements to purchase marijuana on Friday, February 11, 1972 at the Cohn residence."

The Court, finding that defendants have no standing to object to the search and that, even if they did have standing, the search warrant was properly issued, is of the opinion that defendants' motion to suppress should be and it is hereby denied.