**UNITED STATES of America**

v.

**James V. CANESTRI.**

**Crim. No. 13210.**

United States District Court,
D. Connecticut.
May 23, 1974.

Stewart Jones, U. S. Atty., Thomas Maxwell, Jr., Asst. U. S. Atty., New Haven, Conn., for plaintiff.

Ira B. Grudberg, Jacobs, Jacobs & Grudberg, New Haven, Conn., for defendant.

## RULING ON MOTION TO SUPPRESS

ZAMPANO, District Judge.

The defendant, James V. Canestri, moves to suppress as evidence three firearms which form the basis for the three-count indictment charging him with the knowing possession of weapons not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5861(d) and 5871.

### I.

On October 16, 1972, police were notified by one Anthony Mezzonotte of Orange, Connecticut that his home had been burglarized and that a valuable antique gun collection was missing. Two days later, an informant "known" to patrolman Rodger Addil reported to the officer that while at the home of Joseph Canestri, a reputed possessor of stolen

merchandise, he observed certain antique guns which fit the description of the weapons in the Mezzonotte collection. On that same date, a reliable informer, who had furnished the police with "substantiated information on numerous occasions which led to five convictions", indicated to police officer Robert Stankye that on the night of the Mezzonotte robbery one Kenneth J. Davis, Jr., had certain guns in his possession similar to those taken in the burglary. It was common knowledge in the Orange Police Department that Davis and Canestri were friends and associates and that Davis had recently visited at the Canestri home.

This information was set forth in two affidavits by officers Addil and Stankye who then successfully applied to the Honorable Alvin Rottman, a judge of the Connecticut Circuit Court, for warrants authorizing the search of the Davis and Canestri homes and the seizure of specified antique firearms.

At approximately 8:00 P.M. on October 19, 1972, police commenced a search of the Canestri home located at 85 Granniss Road in Orange. At home at the time was Mrs. Josephine Canestri, the owner of the premises, and the mother of Joseph Canestri who also occupied the house. Although a search of Joseph's bedroom uncovered a hidden set of narcotics' paraphernalia, the items enumerated in the warrant were not found in the upper floors of the house. Police then proceeded to the basement and discovered a locked storeroom. Mrs. Canestri informed the officers that this room was "used" by her older son, James Canestri, the defendant herein, who resided elsewhere. The defendant was contacted by telephone and gave police permission to break into the storeroom "as gently as possible."

Upon prying the door open, police discovered a total of 70 weapons located on the floor, on counters and in cabinets, along with a set of narcotic "works." Officer Rubino selected five guns at random and relayed the serial numbers to the National Crime Information Center in Hartford, Connecticut. When he was informed that one of the weapons was stolen, Rubino for the next three hours systematically "checked out" each of the guns with the Center. Eleven of the guns were determined to be contraband.

Meanwhile the defendant and his brother Joseph Canestri arrived on the premises at 9:30 P.M. and offered to provide police with the stolen Mezzonotte collection if they were not prosecuted on any "drug charges."[1] The police agreed and both brothers were permitted to leave the house to retrieve the stolen antique weapons. They returned several hours later with each of the guns described in the search warrant. The police left the premises at approximately 12:30 A.M.

The next day further investigation disclosed that three of the eleven weapons seized in the defendant's room had not been registered pursuant to the requirements of federal law. This prosecution followed.

## II.

The defendant first contends that the search warrant was issued without probable cause for two reasons: (1) the initial informant named in the affidavit was not demonstrated to be "reliable"; and (2) the underlying facts set forth in the affidavit were insufficient to justify a belief that the Mezzonotte gun collection was in the Canestri home. The Court disagrees.

 There was a substantial basis for the state judge to conclude that the informant was reliable and that the antique guns were probably in the Canes-

---

1. The defendant concedes that no promises were requested or extended that related to any charges concerning the illegal possession of guns.

tri house. Cf. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aquilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). While it is true the affidavit did not recite that the informant had previously supplied accurate information, reliability of an informant may be established in collateral ways. United States v. Sultan, 463 F.2d 1066, 1068–1069 (2 Cir. 1972); United States v. Bozza, 365 F.2d 206, 225 (2 Cir. 1966). Here the informant was known to the officer affiant for two years. He personally observed the antique guns in the Canestri home and his detailed description of the weapons convinced the affiant that they "fit the description of guns taken from the Mezzonotte home" just two days before. In addition, the affidavit alleged that Canestri was known to police to have stolen merchandise in his possession on a previous occasion. Corroboration was further provided by a reliable, tested informer who disclosed to the police that on the night of the burglary a close friend and associate of Canestri had the weapons in his possession.

Therefore, even assuming the original tip from the first informant was itself insufficient, it was buttressed by trustworthy information obtained independently by police to produce probable cause. The official verification of the crime, the tip from a known informant, corroboration by a reliable informer, and police knowledge of the suspect's reputation were factors which, in combination, adequately afforded a basis upon which the state judge properly determined the constitutional propriety of the affidavit and reasonably issued the warrant. See United States v. Harris, supra, 403 U.S. at 580–583; United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Rugendorf v. United States, 376 U.S. 528, 531–533, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964);

United States v. Canieso, 470 F.2d 1224, 1231 (2 Cir. 1972); United States v. Viggiano, 433 F.2d 716, 718–719 (2 Cir. 1970); McCreary v. Sigler, 406 F.2d 1264, 1269–1270 (8 Cir. 1969); United States v. Cotham, 363 F.Supp. 851, 856 (W.D.Tex.1973); United States v. Majchszak, 357 F.Supp. 1371, 1373–1374 (E.D.Wis.1973).

### III.

■ The defendant next claims that the search of the storeroom exceeded the area of authority delimited by the warrant.

It seems clear, however, that the permissible scope of the search extended to every room in the house, including the locked storeroom in the basement. The search warrant accurately described the premises; the Town Clerk's Office in the Town of Orange listed Mrs. Joseph Canestri as the owner of the property; and police files noted that Joseph Canestri resided there. The warrant did not limit the search to Joseph's bedroom and the police had no notice of a possible dual ownership of the storeroom until after the search was well underway when "it was too late for them, consistent with the success of their mission, to have retreated and obtained a new warrant." United States v. Santore, 290 F. 2d 51, 67 (2 Cir. 1960), cert. denied, 365 U.S. 834, 81 S.Ct. 749, 5 L.Ed.2d 744 (1961).

Furthermore, since the storeroom was a likely place for the antique guns to be hidden, it was reasonable for the police to determine whether it contained the property described in the warrant for seizure. The defendant did not occupy the room and he was neither deceived nor coerced when he granted police permission to enter it. Compare Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). Thus, the actions of the officers in searching the storeroom were reasonable and within the

scope of the commands set forth in the warrant. To hold otherwise, on the facts of this case, would be to suggest that the purposes of a search warrant could be frustrated by the mere declaration of the owner of a one-family residence that one of the rooms therein "belongs" to a party not named in the warrant. See United States v. Jordan, 349 F.2d 107, 109 (6 Cir. 1965); Walker v. United States, 117 U.S.App.D.C. 151, 327 F.2d 597, 599–600 (1963), cert. denied, 377 U.S. 956, 84 S.Ct. 1635, 12 L. Ed.2d 500 (1964).

## IV.

■ The Court also rejects the defendant's final argument that the police here were engaged in a general exploratory search and seized items which were neither contraband nor described in the warrant.

■ It is, of course, well established that officers may not conduct a general search, even with a warrant, Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931), and that the search warrant must specify the articles to be seized. Rule 41(c), F.R.Crim.P.; Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L. Ed.2d 431 (1965); Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L. Ed. 231 (1927). But it has been equally recognized that "where a police officer has a warrant to search a given area for specified objects, and in the course of the search comes across some other article of incriminating character, the property is seizable under the plain-view doctrine." United States v. Pacelli, 470 F. 2d 67, 70 (2 Cir. 1972), cert. denied, 410 U.S. 983, 93 S.Ct. 1501, 36 L.Ed.2d 178 (1973). Cf. Coolidge v. New Hampshire, 403 U.S. 443, 465–466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

In the case *sub judice*, the police, during the course of a carefully-conducted search pursuant to a properly executed warrant, fortuitously uncovered numerous weapons in a locked room in the basement of the premises. The officers in good faith were looking for several stolen antique guns; they found instead a hidden arsenal of weapons—on their face presumptively contraband. Cf. Seymour v. United States, 369 F.2d 825, 827 (10 Cir. 1966). A spot check of the serial numbers of five guns selected at random revealed that one was stolen. Thereafter it was incumbent upon the police to continue their quest for further incriminating articles within the room. The search was limited in scope and duration; there was no mass seizure. As soon as the investigation was completed, the police left the premises. Unlike the situation in United States v. Dzialak, 441 F.2d 212 (2 Cir. 1971), there was neither an "abhorrent general search" nor a "ransacking" of the house. Moreover, as in United States v. Pacelli, supra, at 71, the police had no prior knowledge of the cache.

Under these circumstances, the law enforcement officers were amply justified in seizing the contraband weapons and, at the first reasonable opportunity the following day, in ascertaining that federal law as well as local law had been violated as a result of the defendant's possession of the items. See, e. g., Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); United States v. Green, 474 F.2d 1385, 1390 (5 Cir. 1973); Anglin v. Director, Patuxent Institution, 439 F.2d 1342, 1347–1349 (4 Cir. 1971); Gurleski v. United States, 405 F.2d 253, 258–260 (5 Cir. 1968); Johnson v. United States, 110 U.S.App.D.C. 351, 293 F.2d 539, 540 (1961).

Accordingly, the defendant's motion to suppress is denied.