UNITED STATES of America

v.

John Craig DELOZIER.

Crim. No. B-83-18-CR(19).

United States District Court,
E.D. Texas,
Beaumont Division.

Aug. 27, 1986.

Wes Rivers, Beaumont, Tex., for plaintiff.

Dick DeGuerin, DeGuerin & Dickson, Houston, Tex., for defendant.

## MEMORANDUM OPINION

COBB, District Judge.

On August 8, 1979, Robert Piaz, a narcotics detective with the Harris County Sheriff's Department [1] became involved in an undercover investigation, initiated by the St. Louis, Missouri, office of the United States Drug Enforcement Administration.

On August 8, Detective Piaz met with two agents from the St. Louis D.E.A. office, and a confidential informant. The three agents discussed the information gained from the informant, and decided to proceed with the undercover operation.

The agents first made contact with Rafael Canales to negotiate the purchase of several thousand pounds of marijuana. After that conversation, the informant, Piaz, and Agent Wells proceeded to the Intercontinental Motor Inn in Houston, Texas, where they met with Rafael Canales and Santos Dominguez. At the hotel, it was agreed that they would proceed to where the marijuana was located so the "buyers" could inspect the marijuana before a deal was consummated. The undercover agents were seated in the back of the vehicle, and as Canales left the hotel, he reached a high rate of speed. Detective Piaz asked him to slow down, so they would not draw attention to themselves. Canales responded that he was trying to shake any surveillance that may have existed.

The car proceeded first south on the frontage road, and then turned north on Interstate 45, where it proceeded to a secluded farmhouse located on Interstate 45 north of Houston near Spring, Texas. At this location, they came to a locked gate, paused for a moment, and were approached by a white male on a minibike. The white male, who was carrying a weapon, opened the gate and allowed them to enter. Detective Piaz identified this man as the defendant, John Craig Delozier. The marijuana was inspected and a purchase price set of $240 per pound for 5,000 pounds, a total of $1,200,000. At that point, Detective Piaz informed the others that to purchase the marijuana, it would be necessary for him to make a phone call to arrange for the delivery of the purchase price. This phone call was placed on the return trip to the hotel. By way of this call, Detective Piaz informed his headquarters that they should proceed to the Intercontinental Motor Inn so that an arrest could be made of Canales and Dominguez. He also informed his surveillance team as to where he was located, since Canales had effectively shaken the surveillance team provided for the protection of the undercover officers. Canales and Dominguez were later arrested at the Intercontinental Motor Inn. After that arrest, Detective Piaz placed another call to Detective Joe Martinez, an officer with the Harris County Sheriff's Department. Detective Piaz relayed the information in order for Martinez to seek a search warrant and seize the marijuana located at the house. While Detective Martinez was obtaining the search warrant, Detective Piaz and Agent Wells returned to the farmhouse and established surveillance. At approximately 7:55 p.m. on the night of August 8, Judge Frank Price, a state district judge, issued a search warrant to the premises described as follows:

A white wood structure with attached one-car garage. No numbers on the house. The house is approximately one-fourth mile west of the southbound service road of Interstate 45. The road to the house had a rust-colored gate which is locked. The gate to the house can be reached by going northbound on Interstate 45 to Exit 72. The first exit north of the Spring Cypress exiting Interstate 45 at Exit 72 on to Frontage Road and proceeding north on Frontage Road until the first overpass and turning left, proceeding to the stop sign. Turn left on to the service road, and driving south for 1.6 miles to gate entrance. There are no other houses on the road, and the road deadends into a house.

---

1. Detective Piaz is now a special agent of the U.S. Drug Enforcement Administration.

At approximately 9:00 p.m., Detectives Piaz and Wells led the execution of the search warrant, which resulted in the arrest of John Craig Delozier, the seizure of 23,000 pounds of marijuana, $453,000 in cash, and a number of weapons. Delozier argues the evidence obtained in the search should be suppressed under the exclusionary rule, because the search warrant did not adequately describe the premises. (The entrance to the farmhouse is not 1.6 miles from the overpass, but .6 miles, and the gate is not of a rust color, but painted with galvanized paint. The defendant admits the description is in all other respects accurate.)

■ Both the Fourth Amendment and Rule 41 of the Federal Rules of Criminal Procedure dictate that a search warrant must describe the place to be searched. The test for determining the sufficiency of the warrant description is whether the place to be searched is described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched, which is not the one intended to be searched under the search warrant. *United States v. Alvarello*, 592 F.2d 1339 (5th Cir.1979). In applying this test, this court is aware that a search warrant must be tested and interpreted in a common sense and realistic manner, rather than a hypertechnical one. Thus, an error in the description of the place to be searched does not automatically render a search warrant invalid.

In *United States v. Weinstein*, 762 F.2d 1522 (11th Cir.1985), the warrant issued mistakenly described the location of the place to be searched as the office in the northwest corner, when in fact it was located in the southwest corner. The court upheld the warrant because the agent conducting the search had been to the premises before. Likewise, in *United States v. Sklaroff*, 323 F.Supp. 296 (So.Dist.Fla. 1971). The district court upheld a warrant describing the place to be searched as being on the second floor, instead of the third floor. The court noted that one agent had already viewed the third floor apartment door. *See also, United States v. Cotham*, 363 F.Supp. 851 (W.D.Tex.1973) (warrant incorrect with regard to mailbox number and distance of house from road was not included in the description); *United States v. Rivera*, 465 F.Supp. 402 (S.D.N.Y.1979) (wrong street address contained in warrant); *United States v. Pisano*, 191 F.Supp. 861 (S.D.N.Y.1961) (wrong street address contained in warrant). In the present case, it is uncontroverted that Detective Piaz knew the location of the place to be searched, and in fact, led the execution of the search warrant. Most important, however, Detective Piaz was acting in an unarmed, undercover capacity while gaining the information necessary to obtain a search warrant. Detective Piaz testified that in light of the circumstances, it was important to return to the farmhouse where the marijuana was kept, because those persons at the farmhouse might become suspicious if Agents Wells and Piaz did not return to purchase the marijuana within a reasonable time after leaving the farmhouse. This, coupled with the undercover capacity of Detective Piaz, placed limitations upon his ability to gather information regarding a precise and detailed description of the place to be searched, e.g., Detective Piaz could not readily view the odometer from the back seat.

■ For the following reasons, this court determines that the search warrant issued is valid. Although the description of the place to be searched was technically incorrect, it was reasonable for the location intended to be searched in view of the rural location; the agents applying for and executing the warrant personally knew which premises were intended to be searched; those premises were under constant surveillance while the warrant was being obtained; the premises which were intended to be searched were those actually searched; the verbal description contained in the warrant described the house to be searched with sufficient particularity; and

no nearby house met the warrant's description of the house. Under these circumstances, there is no probability that the executing officer would be unable to locate the premises or that the wrong location would be searched.

It is, therefore, ORDERED that the defendant's motion to suppress the evidence gained in the August 8, 1979, search be in all things DENIED.