**UNITED STATES of America**

v.

Braxton S. ELLIOTT.

Crim. No. 62–154–J.

United States District Court
D. Massachusetts.

Oct. 24, 1962.

W. Arthur Garrity, Jr., U. S. Atty., Thomas P. O'Connor, Asst. U. S. Atty., for the United States.

Stuart Macmillan, William A. King, Haussermann, Davison & Shattuck, Boston, Mass., for defendant.

JULIAN, District Judge.

The defendant is charged with the offense of having made, without lawful authority, a mold for coining half-dollars, and with the additional offense of counterfeiting several coins.

He filed a motion to suppress for use as evidence certain molds, coins, admissions, a letter, and a statement on the ground that they were obtained from him illegally.

On the basis of the evidence presented at the hearing on the motion, I find the following facts:

An anonymous person turned over a letter to the Post Office Department stating that it had been opened by mistake and that a counterfeit coin had been found in it. The letter and the coin had been mailed by the defendant to a woman in Yuma, Arizona. After examining its contents a Post Office inspector resealed the letter and delivered it to the addressee. On February 18, 1962, the Boston office of the Secret Service received a report, together with the letter and counterfeit coin, from a Secret Service agent in Phoenix, Arizona.

The case was assigned to special agent Daigle for investigation. On checking the master index maintained by the Secret Service, Daigle found a reference to the defendant indicating that he might "possibly" be the same person as one Clinton Heinrich, a federal fugitive from justice who had been investigated a month previous. Daigle discussed the evidence with an assistant United States Attorney but was not counseled on whether he should apply for a search warrant.

On February 20, 1962, he went to Springfield, where he intended to call at the defendant's home for the purpose of finding additional evidence.

Upon arriving in Springfield he informed the local police that he was investigating a counterfeiting case in that city, that arrests might be involved, and that he would welcome assistance. He discussed the case with Sergeant Ligarski and stated that he had no search warrant. Ligarski told him that the regulations of his own department required police officers to take "every prior step." He further stated that on the basis of the information given him by Daigle he felt that grounds existed for the issuance of a search warrant. At Ligarski's re-

quest, Daigle accompanied him to the Clerk of the District Court of Springfield. A complaint on behalf of the Commonwealth of Massachusetts was subscribed and sworn to by Ligarski before the Clerk in which he stated only that he believed that counterfeit coins and the tools, machines and materials for making them were concealed on the premises occupied by the defendant at 114 Wilcox Street, Springfield. No grounds were stated for Ligarski's belief. The complaint concluded with a prayer for a warrant to search the premises for the items mentioned. A search warrant was issued authorizing Springfield police and certain other municipal, county, and state officers to enter and search the described premises "in the day time, or night time."

On the evening of the same day, Agent Daigle, Sergeant Ligarski, and two detectives went to the defendant's home at 114 Wilcox Street. They arrived there at about 7 p. m., after dark. Daigle and Ligarski went to the front door while the two detectives covered the rear door.

A younger brother of the defendant opened the front door, and after Agent Daigle and Sergeant Ligarski identified themselves as members of their respective agencies, the defendant's brother invited them in.

The defendant stepped forward from the bedroom and said, "What is this all about?" Agent Daigle replied, "It is about the coins." Thereupon Sergeant Ligarski stated, "We have a warrant." The defendant replied, "You don't need any warrant. I made the coins. I have got them right here in my stand in the bedroom."

The defendant led them into the bedroom and there gave them eleven counterfeit coins. He then took them down to the cellar and showed them two molds and told Agent Daigle that he could take them. The agent took them.

After gaining possession of the coins and the molds, Agent Daigle informed the defendant that the manufacturing of coins was illegal and thereupon placed him under arrest. Daigle then told the defendant that he would be taken to police headquarters, that he would be requested to make a statement, that he had a right to remain silent, and that he was entitled to notify anyone he wished.

They arrived at police headquarters at approximately 8 p. m. There the defendant was booked, fingerprinted, and photographed. This procedure lasted about a half hour. The defendant was then taken to a separate room where he was questioned by Agent Daigle until about 10 p. m. No other person was present. In the course of the interrogation Daigle prepared a statement which was later signed by the defendant in the presence of Ligarski.

There was a United States Commissioner in Springfield but Agent Daigle made no attempt to contact him until after he had finished interrogating the defendant and the statement was signed. The reason he gave for not attempting to get in touch with the Commissioner sooner was that he "wanted to take a statement and prepare the thing in an orderly fashion."

At about 10 p. m. he made a telephone call to the Commissioner's home. Receiving no answer, he made no further attempt until the following morning.

The defendant was brought before the Commissioner about 10 a. m. on the following day after being questioned by a Post Office inspector.

Sergeant Ligarski endorsed the following return on the search warrant: "Search of the within premises by virtue of this warrant became unnecessary in view of the occupants [sic] permission to enter and search. Special Agent Andrew Daigle of U. S. Treasury Dept. was in attendance."

It is obvious that the local police went into action in response to Agent Daigle's request for assistance, and that Agent Daigle used the local police to aid him in accomplishing the purpose for which he went to Springfield, namely, to obtain evidence of the violation of federal laws by the defendant.

The activity directed at the defendant on February 20 was essentially activity of the federal government. A federal law-enforcement officer will not be permitted to by-pass the requirements of federal law by utilizing a warrant issued for his convenience to local officers under less exacting rules of state procedure. Therefore, federal and not state standards will be applied to determine the validity of the search warrant, the legality of the search and of the arrest, and whether the evidence sought to be suppressed was lawfully obtained.

■ The Court finds no basis for the government's claim that, by stipulation of the parties, the validity of the warrant was not to be an issue.

■ The warrant issued by state authority is clearly bad when tested by the Fourth Amendment and Rule 41(c) of the Federal Rules of Criminal Procedure. No facts were set out in Ligarski's affidavit which could reasonably satisfy a judge or a United States Commissioner that grounds for the issuance of a search warrant existed or that there was probable cause to believe that they existed. An affidavit for a search warrant must recite facts and may not be based solely upon the affiant's belief. United States v. Pearce, 7 Cir., 1960, 275 F.2d 318; Baysden v. United States, 4 Cir., 1959, 271 F.2d 325, 328; see also Giordenello v. United States, 1958, 357 U.S. 480, 485–486, 78 S.Ct. 1245, 2 L.Ed.2d 1503. It is not material that the search revealed evidence of a violation of federal statutes. A search prosecuted in violation of the Constitution is not made lawful by what it brings to light. Byars v. United States, 1927, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520. The affidavit was not sworn to before a judge or commissioner as required by Rule 41(c). The search warrant purported to authorize entry into the described premises in the nighttime. Under Rule 41(c) a search warrant may authorize service in the nighttime only if the affidavit is positive that the property is in the place to be searched. The affidavit failed to meet this requirement.

■ The government contends that the defendant consented to the search and thereby dispensed with the necessity of a search warrant. The contention is rejected. Agent Daigle and Sergeant Ligarski obtained entry into the defendant's home under color of their office and under color of a search warrant. The defendant had no reason to question the validity of the search warrant. He had every reason to assume that the officers were acting under a valid search warrant. Orderly submission to law-enforcement officers who, in effect, represented to the defendant that they had the authority to enter and search the house, against his will if necessary, was not such consent as constituted an understanding, intentional and voluntary waiver by the defendant of his fundamental rights under the Fourth Amendment to the Constitution. Amos v. United States, 1921, 255 U.S. 313, 317, 41 S.Ct. 266, 65 L.Ed. 654; Johnson v. United States, 1948, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. Every reasonable presumption will be indulged against the waiver of a fundamental right by one charged with crime. Glasser v. United States, 1942, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680.

■ The government further contends that the search of the defendant's house was incidental to his arrest and therefore lawful. The evidence does not support this view. The arrest of the defendant followed the unlawful search and was based upon evidence obtained from the defendant as the result of the unlawful search. The government may not justify the arrest by the search and at the same time justify the search by the arrest. "An officer gaining access to private living quarters under color of his office and of the law which he personifies must then have some valid basis in law for the intrusion. Any other rule would undermine 'the right of the people to be secure in their persons, houses, papers, and effects' * * *." Johnson v. United States, 1948, 333 U.S. 10, 16–17, 68 S.Ct. 367, 370, 92 L.Ed. 436.

■ The government explicitly states that it does not rely on the infor-

matioɪ obtained from the letter that was opened without authority to justify the arrest of the defendant. The arrest cannot be justified on the ground that he was a fugitive. Daigle did not base the arrest on that ground. In fact, there was no probable cause to believe that the defendant was a fugitive. There was merely an indication in the master index that the defendant might possibly be the same person as the fugitive. "The police may not arrest upon mere suspicion but only on 'probable cause'." Mallory v. United States, 1957, 354 U.S. 449, 454, 77 S.Ct. 1356, 1359, 1 L.Ed.2d 1479. No warrant for the defendant's arrest had ever been issued. Agent Daigle had ample time on February 19 and 20 to apply for a search warrant or warrant of arrest before a judge or United States Commissioner in Boston or Springfield, but did not do so. No attempt appears to have been made to comply with the procedures detailed in Rules 3, 4, 5(a), and 41 of the Federal Rules of Criminal Procedure. No reason was offered at the hearing for not obtaining a warrant in accordance with the Rules cited.

The entry and search of the defendant's home and the arrest and detention of the defendant were unlawful.[1]

The property obtained in the defendant's home, the signed statement of the defendant obtained at police headquarters, and all admissions made by the defendant to federal agents or local police officers from the time they entered the defendant's home until he was brought before the United States Commissioner on the following day were illegally obtained and are therefore ordered suppressed as evidence against the defendant.

The evidence presented at the hearing is insufficient to enable the Court to determine whether the letter and the counterfeit coin enclosed with it should be suppressed as evidence on the ground that they were illegally obtained. The position of the government with respect to these two items is not clear.[2] Therefore, that part of the motion which seeks to suppress the letter and the enclosed coin is denied without prejudice to the defendant's right to object to their admission when they are offered by the government at the trial.

1. The agent also failed to comply with Rule 5(a) which requires that an arrested person be taken without unnecessary delay before the nearest available commissioner or other authorized officer. No attempt was made to do this until after the agent had interrogated the defendant and obtained a statement from him. The reason given for the delay was that the agent "wanted to take a statement and prepare the thing in an orderly fashion." The very purpose of the rule is to check resort by officers to secret interrogation of persons accused of crime. Upshaw v. United States, 1948, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100; Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479.

2. In the memorandum filed in opposition to the motion to suppress it is stated as follows: "The right to send mail first class and not have it opened, examined or pried into by unauthorized persons is guaranteed by the Fourth Amendment to the United States Constitution. Ex parte Jackson, 96 U.S. 727, 24 L.Ed. 877 (1878); reaffirmed in Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928). Not only the Supreme Court of the United States but the Congress has exercised its authority in protecting the right of persons to be free in these matters. By act of Congress (now U.S.C. Title 18, Sec. 1702), it is a crime for any person to take from the mail before it has been delivered to the addressee any such letter with the intention to obstruct such correspondence or pry into the business or secrets of another. In this case the defendant's rights in this regard seem to have been violated by a person or persons unknown. It may also be inferred that the Government obtained information relating to the defendant as a result of these violations. * * * However, the Government does not rely upon this information to justify the arrest of the defendant."