**Ruben NAVARRO, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 24718.**

United States Court of Appeals
Fifth Circuit.

Aug. 8, 1968.

R. Norvell Graham, Jr., Louis E. Marshall, San Antonio, Tex., for appellant.

Andrew L. Jefferson, Asst. U. S. Atty., Ernest Morgan, U. S. Atty., San Antonio, Tex., for appellee.

Before JONES, WISDOM, and THORNBERRY, Circuit Judges.

WISDOM, Circuit Judge:

Ruben Navarro appeals from his conviction under 21 U.S.C. § 174 for the illegal possession of heroin. The main issues relate to the validity of the search during which the drug was found.

December 19, 1966, Officer Ortiz of the Narcotics Squad of the San Antonio city police received a call from an informer who stated that he had seen heroin in Navarro's home. Ortiz prepared an affidavit, stating that he knew the informer, having received information from him in the past which had proved correct, and that he therefore had reason to believe that the drugs were present in Navarro's house. On the basis of this affidavit, he obtained a search warrant from a judge of the Corporation Court of the City of San Antonio, acting as a magistrate in accordance with state law. See Article 18.01, Texas Code of Criminal Procedure. Ortiz then asked the local agents of the Federal Bureau of Narcotics to join in the search. Ortiz, two federal agents, and a city detective went to Navarro's residence where they took up surveillance for several hours. They entered the house, showed the warrant, and conducted a search. In the front bedroom they found a package containing approximately seven grams of heroin.

Although the city officers first located the package they turned it over immediately to the federal agents, and the drugs have been in federal custody ever since. The federal agents placed Navarro under arrest, gave him *Miranda* warnings, and took him to the Narcotics Bureau office. He too has been in federal custody since his arrest. The state filed no charges against Navarro; with the exception of the issuance of the warrant, the federal government has taken all of the legal action in this case. In the district court Navarro moved to suppress the narcotics seized as evidence. After a hearing, the motion was denied. At the trial he renewed his objection to the admission of the narcotics. The court overruled the objection. The jury returned a verdict of guilty, and the conviction from which the present appeal is taken followed. We reverse.

Rule 41(a) of the Federal Rules of Criminal Procedure reads as follows:

(a) Authority to Issue Warrant. A search warrant authorized by this rule may be issued by a judge of the United States or of a state, commonwealth or territorial *court of record* or by a United States commissioner within the district wherein the property sought is located. (emphasis added)

The parties here are in agreement that the San Antonio Corporation Court is not a Court of Record under Texas law. See Texas Dept. of Public Safety v. Johnson, Tex.Civ.App.1964, 385 S.W.2d 720, 722, Ex parte Hayden, 152 Tex.Cr. R. 517, 215 S.W.2d 620, 622. The threshold issue before us is whether the warrant issued by that court could validly justify the search.[1]

I.

Initially, we conclude that the search was a *federal* search. Courts settled this question long before the Fourth

---

[1.] We do not deal with the validity of the search under the constitutional requirements of the fourth amendment. The district judge below stated, with regard to the constitutional issue, "that this procedure just barely qualifies."

Amendment was held to be applicable to the states and in the era of the "silver platter" doctrine. This doctrine permitted in federal prosecutions the use of evidence seized by state peace officers in a manner inconsistent with the constitutional requirements applicable to federal officers.

In Byars v. United States, 1927, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520, a state police officer obtained from a state judge a warrant authorizing a search for intoxicating beverages and related material. The police sought the assistance of a Federal Prohibition Agent, who accompanied the four state officers to the place to be searched. They discovered strip stamps of the kind used on bonded whiskey bottles, the possession of which was a federal offense. The prohibition agent took possession of the stamps. The United States prosecuted and convicted Byars. On these facts the Court held that the search was a federal search:

> The attendant facts here reasonably suggest that the federal prohibition agent was not invited to join the state squad as a private person may have been, but was asked to participate as a federal enforcement officer, upon the chance, which was subsequently realized, that something would be disclosed of official interest to him as such agent.

273 U.S. at 32, 47 S.Ct. at 249, 71 L.Ed. at 523.

Since the warrant was "clearly bad if tested by the Fourth Amendment and the laws of the United States * * * whether it is good under the state law it is not necessary to inquire, since in no event could it constitute the basis for a federal search and seizure, as, under the facts hereinafter stated, it is insisted this was." 273 U.S. at 29, 47 S.Ct. at 248, 71 L.Ed. at 522.

Similarly, in Lustig v. United States, 1949, 338 U.S. 74, 69 S.Ct. 1372, 93 L. Ed. 1819, local police informed a United States Secret Service agent of suspected counterfeiting violations. He investigated the location, a hotel room, without entering. On his suspicions that there might be state law violations occurring in the room, the local police obtained an arrest warrant for the two men registered in the room. The state police entered the room, in the absence of the suspects, and conducted a search. The federal agent was not with them at this time. After finding evidence of a counterfeiting operation the police called the Secret Service agent to join in the examination. When the occupants returned they were placed under arrest and later were convicted of counterfeiting. On these facts, and despite the limited participation by the federal officer in the search, the court held that this was a federal search, and that since the requirements of the Fourth Amendment were not met, the evidence seized should not have been received in the federal court.

Writing the prevailing opinion in Lustig for himself and three other members of the Court, Justice Frankfurter said of Byars.

> The crux of that doctrine is that a search is a search by a federal official if he had a hand in it; it is not a search by a federal official if evidence secured by state authorities is turned over to the federal authorities on a silver platter. The decisive factor in determining the applicability of the Byars Case is the actuality of a share by a federal official in the total enterprise of securing and selecting evidence by other than sanctioned means. It is immaterial whether a federal agent originated the idea or joined in it while the search was in progress. So long as he was in it before the object of the search was completely accomplished, he must be deemed to have participated in it. Where there is participation on the part of federal officers it is not necessary to consider what would be the result if the search had been conducted entirely by State officers.

338 U.S. at 78–79, 69 S.Ct. at 1374, 93 L.Ed. at 1823.

The facts in this case demonstrate even more clearly than those in Byars and Lustig that this was a federal

search. The Narcotics Bureau agents were invited to join the enterprise shortly after the search warrant was obtained. There were two officers representing each jurisdiction conducting the search. The testimony of the officers suggests that the chief federal narcotics agent was in charge of the operation at the scene. Although a city officer actually found the drugs, he immediately turned them over to one of the federal agents, who kept them in his custody. Navarro was placed under arrest, given a *Miranda* warning, and interrogated by a federal agent. He was taken to the Narcotics Bureau office and remained in federal custody. The complaint against him was filed with the United States Commissioner, who also set bail. He was indicted by a federal grand jury, and prosecuted in a federal court. Clearly, then, the operation which led to the discovery of the drugs can be described only as a "federal search."

## II.

 While the case law is not quite so compelling, it appears equally certain that a warrant could not be obtained in this manner by a federal officer and serve to sanction a search conducted by him. The Rules of Criminal Procedure are not merely admonitory. They have the force of law. See United States v. Virginia Erection Corp., 4 Cir. 1964, 335 F.2d 868; 18 U.S.C. § 3771. As

stated by Judge Holtzoff, speaking of the effect of these rules:

Courts may adopt rules of procedure and rules of evidence, which may result in limitations on the activities of prosecuting attorneys and law enforcement agencies, requiring them to modify or change some of their practices, possibly eliminating some of them and curtailing their activities. United States v. Mihalopoulos, D.D.C. 1964, 228 F.Supp. 994, 1010.

It is well established that a violation of the provisions of the rules may lead to the suppression of evidence thereby obtained. See, e.g., Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479.

 The purpose of Rule 41 is to carry out the mandate of the fourth amendment.[2] It binds *federal* courts and *federal* law enforcement officers.[3] As the Supreme Court said in Rea v. United States, 1956, 350 U.S. 214, 76 S. Ct. 292, 100 L.Ed. 233:

The obligation of the federal agent is to obey the Rules. They are drawn for the innocent and guilty alike. They prescribe standards for law enforcement. They are designed to protect the privacy of the citizen, unless the strict standards set for searches and seizures are satisfied. That policy is defeated if the federal agent can flout them and use the fruits of his unlawful act either in federal or state

---

**2.** The evolution of Rule 41(a) shows that it is taken almost verbatim from the pre-existing federal statute authorizing the issuance of federal search warrants. See 40 Stat. 228 (1917), Title XI, § 1. There is no clear explanation of the requirement that warrants may be issued by state judges only if they are judges of a court of record. We note that at least one United States Attorney, commenting at the time these rules were first proposed, expressed the view that federal search warrants should not be permitted to be issued by state or territorial judges at all. 5 Orfield, Criminal Procedure Under The Federal Rules 718 (1967).

**3.** Gillespie v. United States, 8 Cir. 1966, 368 F.2d 1, held that evidence may be

admissible in a federal prosecution even if it is obtained by state officers in a manner not entirely consistent with Rule 41, although constitutionally permissible. We cannot agree, however, that the Rule is "only a procedural prescription as to the issuance of warrants by the federal courts." Id. at 4. That view is inconsistent with the authority given by the rules to other than *federal judges* to issue such warrants. *Gillespie* is not relevant to this case, for there, the search was conducted entirely by state officers looking for violations of state law, and federal participation did not commence until after the search was completed. See also United States v. Bowling, 6 Cir. 1965, 351 F.2d 236.

proceedings.

350 U.S. at 217–18, 76 S.Ct. at 294, 100 L.Ed. at 237.

Authority to issue warrants exists only insofar as granted by the rules, and no further.[4]

### III.

The parties have not cited, nor have we discovered, any reported case directly in point, that is, involving a search warrant issued to a state officer and used for a joint (and therefore "federal") search by a judge lacking authority to issue a warrant under the federal rules. Analagous are United States v. Elliott, D.Mass.1962, 210 F.Supp. 357, and United States v. Brougher, W.D.Pa.1956, 19 F.R.D. 79, but in each of those cases, the suspected criminal violations were initially discovered by federal agents, who sought assistance from state officers and had these officers procure search warrants. In each case the court found an obvious effort to avoid the requirements of Rule 41[5] by the use of state warrants. In this case, there is no evidence of bad faith on the part of either the state or federal officers.

However well intentioned the officers may have been, Rule 41 does not sanction the procedure used here. The evidence discovered therefore should have been suppressed. We do not mean to suggest in any way that we would discourage cooperation between federal and state law enforcement officers.[6] It is essential, however, that such cooperation should comply with the rules. It has been established at least since *Byars* that when state law enforcement officers do cooperate for the benefit of the federal sovereign, all parties must adhere to the federal standards. This has been the law despite the fact that until 1960, state officers acting alone could violate both the federal Constitution and the laws of the state, without rendering evidence thus obtained inadmissible in federal courts.[7] This "silver platter" doctrine was finally laid to rest in Elkins v. United States, 1960, 364 U.S. 206, 80 S. Ct. 1437, 4 L.Ed.2d 1669, when the Court held that federal prosecutions were no less tainted by the lawlessness of state officers than by that of federal officers. Permitting the continuance of the practice herein might well lead to a

---

4. In United States v. Muncey, E.D.Tenn. 1960, 185 F.Supp. 107, officers of the Alcohol and Tobacco Tax Division obtained a search warrant from a Tennessee state judge, and on that authority, conducted a search of the defendant's home. In a motion to suppress, the defendant contended that the search was invalid, on the ground that the issuing judge had authority only within the territorial jurisdiction of this court, while the search was conducted in another county. Looking to state law, the district court held that the state judge had, at least for this purpose, state-wide authority, and that the search was therefore valid. Although state law was determinative in evaluating the authority of the judge who issued the warrant (as it is in this case), it is clear that that decision does not question the fact that his authority to issue a federal search warrant comes from federal law. Similarly, in Application of Houlihan, D.N.Dak. 1962, 31 F.R.D. 145, the court held that a warrant issued to federal tax agents by a judge of a state county court, "a state court of record," Id. at 146, could

not be executed in another county, as the authority of the judge was limited to the county in which he sat.

5. In *Elliott*, the court held that the warrant was bad when tested under the Fourth Amendment as well. 210 F.Supp. at 360.

6. For example, the result here could have been avoided, had Ortiz reached the federal agents before obtaining the search warrant, and then, with their assistance, obtained a warrant, on the basis of his affidavit, from an officer authorized to issue it under the federal Rules. This would seem to be the better practice in situations such as narcotics violations, where there is a strong likelihood that the eventual prosecution will be undertaken by the federal government. Should it later be determined that the case should be prosecuted by the state, there would seem to be no barrier to the use of evidence thus obtained in the state courts.

7. Many of the pre-Elkins cases on federal-state cooperation are collected in United States v. Moses, 7 Cir. 1956, 234 F.2d 124.

limited revival of the "silver platter" practice.

The judgment of conviction is reversed.