**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Marion HARRINGTON, Defendant-Appellant.**

**No. 73-1986.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 9, 1974.

Decided Oct. 11, 1974.

---

Fairchild, Circuit Judge, concurred and filed opinion.

Palmer K. Ward, Indianapolis, Ind., for defendant-appellant.

Stanley B. Miller, U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and FAIRCHILD and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

In October 1972, a two-count indictment was returned against defendant. The first count charged that he unlawfully possessed 19 packages of heroin on September 18, 1972. The second count charged that on the same date he illegally possessed seven packages of cocaine. Both counts were based on 21 U.S.C. § 841(a)(1). After a bench trial, defendant was found guilty as charged and received three-year concurrent sentences on each count, plus a special parole term of three years.

The sole question presented on appeal is whether defendant's motion to suppress the evidence described in the indictment should have been granted on the ground that the search warrant had not been obtained and served in compliance with Rule 41 of the Federal Rules of Criminal Procedure.

The testimony developed at the hearing on the motion to suppress showed that two Indianapolis, Indiana, police department officers had been assigned to the federal Drug Abuse Law Enforcement program ("DALE"). On September 18, they received information from two confidential informants that during the prior 48 hours defendant had been selling heroin and cocaine in apartment 21 at 962 Pennsylvania Street in Indianapolis.

Upon the affidavit of one of the police officers, Judge Valan S. Boring of the Municipal Court of Marion County, Indiana, issued a search warrant in the name of that state, directed to the superintendent and any member of the Indianapolis police force.

Agent Albert Cotton of the Indianapolis police department was in charge of the search party. Two other Indianapolis police officers and two agents of the Marion County, Indiana, Sheriff's department participated in the execution of the search warrant. These agents were also detailed to the DALE task force. Two federal employees, the chief investigator of DALE and an Assistant United States Attorney, were present during the search as observers.

The five participating agents arrived at the apartment in question about 9:00 p. m. on September 18. Since no one admitted them after they requested entry, they entered by force after waiting a few minutes. The apartment was empty. Only three agents actually participated in the search of the apartment, while the other two took up a watch at the front door of the building.

One of the Indianapolis policemen found 19 packages of heroin in the top drawer of a dresser in the bedroom. Thereupon, Minnie Jordan, who shared the apartment with the defendant, arrived home. The agents read the search warrant to her, allowed her to peruse it and told her that she could obtain a copy from the clerk of the state court. She was then apprised of her rights and placed under arrest.

One of the deputy sheriffs then found seven packages of cocaine concealed between the window sill and the air conditioner in the bedroom. Thereupon defendant and two others arrived at the apartment. As they had with Minnie Jordan, the agents read the search warrant to defendant, allowed him to peruse it and told him where he could obtain a copy. Defendant was told that narcotics had been found on the premises, was apprised of his rights and was placed under arrest. Defendant acknowledged to one of the agents that the drugs were his and requested that Miss Jordan not be arrested, but the agent refused this request. Both defendant and Miss Jordan were taken into custody and were booked and jailed at Indianapolis police department headquarters.

The narcotics in question were deposited in the property vault of the Indian-

apolis police department. On September 19, defendant and Miss Jordan were taken before the Municipal Court of Marion County, Indiana, for a preliminary hearing on the charge of violating the 1935 Indiana Narcotic Act, and bond was sent. A month later, these facts were presented to the federal grand jury that returned the present indictment.

■ The Government first contends that the search was conducted by local officials and was, therefore, a state undertaking, so that Rule 41 of the Federal Rules of Criminal Procedure was inapplicable. On the other hand, the chief investigator of DALE and an Assistant United States Attorney were present at the search as observers. Since the search ultimately resulted in a federal indictment and the state proceedings were dismissed when the federal indictment was returned, we will assume that this was a federal search, as did the Fifth Circuit under similar circumstances in United States v. Sellers, 483 F.2d 37, 42 (5th Cir. 1973), certiorari denied 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212.

Appellant cites Navarro v. United States, 400 F.2d 315 (5th Cir. 1968), in support of his contention that the court below erred in denying his motion to suppress. In Navarro, state and federal agents conducted a search, which the court held to be "federal," pursuant to a search warrant issued in a state court. The state court was not a court of record and, therefore, the search warrant failed to meet one of the requirements of Rule 41 as it then read.[1] The court exercised its supervisory power and held that the evidence seized pursuant to the warrant should be suppressed. Here, however, the search warrant was issued by a judge in a court of record in accordance with the first requirement of Rule 41 of the Federal Rules of Criminal Procedure prior to its amendment. Therefore, the precise holding in Navarro is of no aid to defendant.

Furthermore, in Sellers the Fifth Circuit held that its decision in Navarro does not require the exclusion of evidence under the court's supervisory powers in every situation where a "federal" search pursuant to a state search warrant fails to comply with all the requirements of Rule 41. In clarifying the holding in Navarro, the Fifth Circuit said:

"If, however, the warrant was issued under authority of state law then every requirement of Rule 41 is not a sine qua non to federal court use of the fruits of a search predicated on the warrant, even though federal officials participated in its procuration or execution. The products of a search conducted under the authority of a validly issued state warrant are lawfully obtained for federal prosecutorial purposes if that warrant satisfies constitutional requirements and does not contravene any Rule-embodied policy designed to protect the integrity of the federal courts or to govern the conduct of federal officers." 483 F.2d at 43.

■ As the Fifth Circuit did in Sellers, we too decline to hold that state court warrants must meet all the requirements of Rule 41 whenever federal officers themselves have insufficient evidence of federal law violations to obtain a federal warrant. As Judge Clark there observed:

"Such a rule would not only serve no useful purpose, but it would also place officers acting jointly on the horns of a dilemma in deciding whether to charge a state or federal crime. Such officials should be free to make a considered choice based on the best available information and unencumbered by merely technical procedural rules." 483 F.2d at 44.

■ In the present case, defendant does not argue that failure to comply with Rule 41 violated any of his consti-

---

1. The 1972 amendments to Rule 41, which became effective two weeks after the search warrant challenged by defendant here was issued, omit the court of record requirement.

**134**

tutional rights. Defendant asserts only the following three flaws with respect to this search warrant:

First, it was not directed to "a civil officer of the United States authorized to enforce or assist in enforcing any law thereof or to a person so authorized by the President of the United States" (Rule 41(c)). Since the evidence shows that the President established the DALE program by executive order, the fact that the warrant was directed to an officer assigned to the DALE program is sufficient compliance, should defendant have standing to raise this question.[2]

■ The second flaw asserted is that the person executing the search warrant did not give defendant "a copy of the warrant and a receipt for the property taken" (Rule 41(d)). However, a copy of the warrant was read to defendant, defendant was allowed to examine the warrant, the property seized was recorded thereon, he was informed where he could obtain a copy with an inventory, and the evidence seized was appropriately labeled and safeguarded until trial, thus satisfying the spirit of Rule 41(d). Any such ministerial violation as the one relied upon here does not warrant suppression of the evidence in the circumstances of this case. See United States v. Gross, 137 F.Supp. 244, 248 (S.D.N.Y.1956).

■ Third, defendant attempts to fault the search warrant because the issuing judge did not attach "a copy of the return, inventory and all other papers in connection therewith and * * * file them with the clerk of the district court * * *" (Rule 41(f)). The search warrant, received in evidence below, shows that it was filed in the Municipal Court on September 18, that it was served on the same date, that the return was on September 19, and that 19 bindles of heroin, seven bindles of cocaine and two revolvers were seized

from the apartment. Since the procedure followed by the Indiana authorities was adequate to protect defendant's rights in the property, this search should not be invalidated because the precise ministerial terms of Rule 41(f) were not met. See United States v. Wilson, 451 F.2d 209, 214 (5th Cir. 1971), certiorari denied, sub nom. Fairman v. United States, 405 U.S. 1032, 92 S.Ct. 1298, 31 L.Ed.2d 490.

■ Here the warrant was issued under authority of Indiana law. Because the warrant satisfies constitutional requirements and does not contravene any substantial policy in Rule 41 designed to protect the integrity of the federal courts or to govern the conduct of federal officers, the motion to suppress was properly denied. A contrary holding would dampen federal cooperation and participation in any warranted search conducted, as here, by state officers for state purposes.

We wholeheartedly agree with the following interpretation of Rule 41 as expressed in *Sellers*:

"Properly read, Rule 41 grants the authority to designated judicial officers, federal and state, to issue federal search warrants. The authority granted to state courts under this rule is *in addition* to the state-vested power of those courts to issue a warrant upon a showing that probable cause exists to believe a violation of state law has occurred. While Rule 41 sets out the procedure to be followed in issuing a warrant for a violation of federal law, it obviously should not be contemplated that the federal rule would purport to regulate the procedures through which state courts may issue search warrants predicated on violations of state law." 483 F.2d at 43.

Since the district court's ruling on the motion to suppress was proper, the judgment of conviction is affirmed.

2. As to lack of standing, see United States v. Gannon, 201 F.Supp. 68, 73 (D.Mass.1961).

FAIRCHILD, Circuit Judge (concurring).

I do not deem that the presence of federal officers or the cooperative nature of the enforcement effort requires that the warrant and search in this case fulfill Rule 41, F.R.Cr.P. It is enough, in my opinion, that the search, which presumably fulfilled state law requirements, complied with federal constitutional requirements.