**UNITED STATES of America**

v.

**Martin Angelo PASSERO.**

**Crim. No. 74-74-F.**

United States District Court,
D. Massachusetts.

Nov. 27, 1974.

Asst. U. S. Atty., Robert Collings, Boston, Mass., for plaintiff.

Mitchell Benjoya, Boston, Mass., for defendant.

## OPINION

FREEDMAN, District Judge.

Defendant has filed a motion to suppress certain evidence in this two-count conspiracy case. By agreement of counsel the matter has been submitted to the Court on affidavits and memoranda.

After due consideration, the Court hereinafter enters its findings and conclusions.

On September 7, 1973, two women were apprehended while attempting to cross the border from Canada into Vermont with five pounds of methamphetamine. This substance was hidden in the left rear quarter panel of the Oldsmobile in which they were riding. The women (Fraser and Burrows) were brought to Boston on September 8 for questioning by agents of the Drug Enforcement Administration ("DEA"). They disclosed that the drugs were to have been delivered to defendant Passero in Springfield, Massachusetts. When Fraser and Burrows failed to arrive in Springfield on time, Passero went to Provincetown, Mass., where Fraser maintained an apartment.

Special Agent Richard Christopher of the DEA, a former Provincetown police officer, contacted Sergeant Warren E. Crawley, Jr., of that department and conveyed the information regarding the drug seizure. He further informed Crawley that he and other agents would be arriving in Provincetown that evening with the women and the automobile. The drugs had been replaced inside the left rear quarter panel.

Christopher and his party arrived in the Provincetown area around 7:00 p. m. After meeting with the Provincetown police, the agents and police officers proceeded to an address at 2 Winthrop Place and placed it under surveillance. Passero arrived at approximately 9:00 p. m. with four other persons. After he had entered the building, Ms. Fraser drove the automobile containing the contraband to the Winthrop Place address. Within a minute of her entering the apartment, Passero came out, unlocked the car, and drove it away.

Due to congested traffic conditions, the federal agents and Provincetown police were unable to keep the vehicle in sight. Other units were alerted.

Shortly thereafter Christopher and Crawley saw a vehicle believed to be the Oldsmobile in question heading toward Provincetown on Route 6A. They were unable to overtake it due to traffic conditions. Passero was arrested by the federal authorities at Winthrop Place when he returned to the apartment at 9:23 p. m.—approximately twenty minutes after his departure. The contraband was no longer in the car.

Shortly after the arrest a key was found by one of the Provincetown officers on the ground near where Passero had been arrested. The key was for Unit #1 at the Harbor Lights Motel on Route 6A in Provincetown. At this point Christopher attempted to contact United States Magistrate John P. Curley, Jr. in Barnstable.[1] When that proved to be unavailing, he tried to call United States Magistrate Peter Princi in Osterville.[2] This, too, was unsuccessful.

Christopher and Crawley then went to the Harbor Lights. There they learned that the defendant had registered in Unit #1 at approximately 9:00 p. m. in the name of "Martin Passero and son." They proceeded to the room and from outside saw that the shades were drawn and the lights were on. Officers from the Provincetown Police Department were assigned to watch the unit.

Christopher and Crawley then returned to the police station where unsuccessful attempts were again made to contact Magistrates Curley and Princi. It was then 11:00 p. m. It was determined that the closest state judge was in Dennis— a round-trip driving distance of 80 miles. The agents and police were concerned that although Passero was in custody and his room was under surveillance, there might have been a confederate inside the room capable of destroying the contraband. They decided that since the possession of methamphetamine was a state crime, the Provincetown police would apply for a search warrant from Assistant Clerk of the

1. Barnstable is a distance of 48 miles from Provincetown.

2. Osterville is 55 miles from Provincetown.

Second District Court of Barnstable Charles Welsh, an officer authorized by statute to issue state search warrants.[3] The application was made by Sergeant Crawley and a warrant issued to the Provincetown police to conduct the search. The federal officer accompanied the police to the Harbor Lights, but waited outside while the room was searched. The drugs were recovered in the search; state charges were brought against Passero in the Second District Court of Barnstable for the possession of the methamphetamine. The complaint was dismissed after the instant conspiracy indictment was returned by the grand jury.

■ Defendant first contends that the search is invalid under Fourth Amendment standards in that the affidavit[4] of Sergeant Crawley was insufficient to establish probable cause for issuance of the warrant. It is the opinion of this Court that the affidavit was more than adequate to establish the requisite probable cause. Defendant's assertions in this regard are without merit. For

---

3. See Commonwealth v. Penta, 352 Mass. 271, 225 N.E.2d 58 (1967).

4. *Affidavit of Warren E. Crawley, Jr.*:
"I, Warren E. Crawley, Jr. Police Sergeant for the Town of Provincetown, Massachusetts do hereby depose and say that on September 8, 1973, Special Agent Richard G. Christopher, John Morgan, et al, of the U. S. Drug Enforcement Administration apprised me that: at approximately 4:00 p. m., on September 7, 1973, two females, Jane Fraser and Diana Burrows, were intercepted upon entry into the United States from Canada at Highgate Springs, Vermont by Officers of the U. S. Customs.
As a result of the said interception, the 1970 Oldsmobile automobile in which Miss Fraser & Burrows had entered the U. S. was searched and found to have concealed in the left rear quarter panel, approximately five (5) pounds of Methamphetamine (aka: "speed"). A field test of the Methamphetamine was conducted, at Boston, Mass. by Special Agents Lambert & Christopher and responded in a positive color reaction.
At 5:00 p. m., on September 8, 1973, Special Agents Christopher & Morgan marked each of five one-pound packages with identifying data and replaced the five (5) pounds of Methamphetamine in the left rear quarter panel of the previously described Oldsmobile automobile. Thereafter, Special Agent Christopher and other special agents of the Drug Enforcement Administration "convoyed" the said automobile to Provincetown, Massachusetts along with Miss Fraser & Burrows for the purpose of delivering the vehicle (with the concealed methamphetamine) . . . to a certain Martin "Sonny" PASSERO. Passero had been identified as the originator of the smuggling violation and the ultimate consignee, by Fraser & Burrows, at an earlier time of the day during conversations with the above-named special agents.
At approximately 9:10 p. m., Passero arrived at the basement apartment of Jane Fraser and entered the apartment. Thereafter Miss Fraser was sent into the apartment. Upon entry, Passero demanded the car keys to Fraser's automobile, left the apartment, entered the vehicle and left the area. The agents and officers on the surveillance were disrupted in their pursuit of Passero by coincidental traffic tie-ups. Immediately upon losing visual contact a General Police Broadcast was put out for Passero and the vehicle. Within twenty minutes Passero was arrested by Special Agents and the Oldsmobile was taken back into federal custody. During the interim while Passero was "lost" from view Special Agent Christopher and Sgt. Crawley while driving on route 6a observed the Subject vehicle operating west on route 6a towards the center of Provincetown from the vicinity of the Harbor Lights Motel . . . pursuit in this instance was also disrupted by intervening vehicular traffic.
At the time Passero was arrested by . . . Mullens (DEA) he, Passero, clandestinely dropped a room key to Unit #1, at the Harbor Lights Motel. That key was found by Provincetown Police Officer Fred DeSouza and based upon that discovery it was determined through examination of the Harbor Lights Motel records that Martin Passero was in fact a registered guest, occupying Unit #1, at the said motel. That information was obtained by Special Agent Christopher and Sgt. Warren Crawley. From the time of the discovery of Passero's occupancy of Unit #1 at the Harbor Lights Motel two uniformed police officers have been on guard at the motel unit involved to prevent the destruction of any evidence of the said violation that might be therein found.
Upon examination of the subject Oldsmobile automobile it was discovered by Special Agents Christopher & Morgan that the methamphetamine (five pounds more or less) had been removed, And, further that that methamphetamine is now believed to be illegally concealed and or kept in the said Harbor Lights Motel Unit #1, Provincetown, Massachusetts."

purposes of the state prosecution the search by local officers was unquestionably valid.

■ Defendant next contends that this was not a state search but a federal search and that it must satisfy the requirements of Fed.R.Crim.P. 41 as well as the Fourth Amendment.

Defendant cites several cases in support of his "federal search" argument.[5] This Court is satisfied that the search must indeed be judged by federal standards for purposes of the federal prosecution. This is true despite the fact that an independent state ground existed for seeking the search warrant from a state officer. I would point out, however, that I find no attempt to circumvent federal procedures in seeking the state warrant. Efforts were made in good faith to contact the appropriate federal officials. It was only after these efforts proved unavailing that the Provincetown police decided to pursue the investigation under the state drug possession statute.

The Supreme Court has not directly addressed this federal/state cooperative search issue since its decisions in Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) ("silver platter" doctrine struck down), and Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (exclusionary rule applied in state criminal prosecutions). The matter has been considered, however, in recent cases in the Fifth and Seventh Circuits.

In Navarro v. United States, 400 F.2d 315 (5th Cir. 1968), cited by the defendant, the court held a search invalid which was conducted by state and federal authorities under a state warrant. The court found invalidity based upon the fact that the court which had issued the warrant was not a "court of record" as then required by Fed.R.Crim.P. 41(a).

However well intentioned the officers may have been, Rule 41 does not sanction the procedure used here. The evidence discovered therefore should have been suppressed. We do not mean to suggest in any way that we would discourage cooperation between federal and state law enforcement officers. [Footnote omitted.] It is essential, however, that such cooperation should comply with the rules. 400 F.2d at 319.

The Fifth Circuit has more recently addressed the problem in United States v. Sellers, 483 F.2d 37 (1973). There the court assumed that there was a federal search where a federal official had been the informer, two federal agents had participated in the search, and there had been a successful state prosecution based upon evidence gathered in the search. Despite a federal search, however, the court distinguished between a federal and state warrant.

If the warrant was issued under authority of Rule 41 as a federal warrant clearly it must comply with the requirements of the rule. If, however, the warrant was issued under authority of state law then every requirement of Rule 41 is not a *sine qua non* to federal court use of the fruits of a search predicated on the warrant, even though federal officials participated in its procuration or execution. The products of a search conducted under the authority of a validly issued state warrant are lawfully obtained for federal prosecutorial purposes if that warrant satifies constitutional requirements and does not contravene any Rule-embodied policy designed to protect the integrity of the federal

5. Byars v. United States, 273 U.S. 28, 32, 47 S.Ct. 248, 71 L.Ed. 520 (1927); Lustig v. United States, 338 U.S. 74, 78, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949); Waldron v. United States, 95 U.S.App.D.C. 66, 219 F.2d 37, 39–40 (1955); United States v. Elliott, 210 F.Supp. 357 (D.Mass., 1962); Navarro v. United States, 400 F.2d 315 (5th Cir., 1968).

courts or to govern the conduct of federal officers. 483 F.2d at 43.

This decision did not overrule *Navarro,* but merely narrowed its application.

The Court of Appeals for the Seventh Circuit followed *Sellers* in United States v. Harrington, 504 F.2d 130 (1974). There the defendant was asserting technical Rule 41 requirements in support of his motion to suppress. The court rejected this argument " . . . (b)ecause the warrant satifies constitutional requirements and does not contravene any substantial policy in Rule 41 designed to protect the integrity of the federal courts or to govern the conduct of federal officers, . . . " 504 F.2d at 134.

This Court has indicated earlier in this opinion that the requirements of the Fourth Amendment have been met. Using the Seller-Harrington approach, the only question which remains is whether the procedure employed in this case violated any substantial policy of Rule 41.

■ The warrant in this case was issued by an assistant clerk of the state district court. Rule 41, §§ (a) and (c) provide for issuance of a search warrant by a "federal magistrate" or "state judge." Despite the fact that assistant clerks have the authority to issue valid state search warrants, Commonwealth v. Penta, 352 Mass. 271, 225 N.E.2d 58 (1967), no construction of Rule 41 would permit such an officer to issue a federal warrant. The qualifications of the issuing officer are perhaps the most important of the provisions contained in the rule. This court is constrained to conclude that this is the kind of requirement " . . . designed to protect the integrity of the federal courts . . . " The failure to have such an officer issue the warrant taints the search under federal standards and mandates the suppression of the evidence in the federal prosecution.

Accordingly, the Court orders that the motion to suppress be allowed.