UNITED STATES of America, Plaintiff,

v.

Michael Lee MESSERLY, Defendant.

No. CR–81–58–GF.

United States District Court,
D. Montana,
Great Falls Division.

Jan. 26, 1982.

752

Byron H. Dunbar, U. S. Atty., Robert L. Zimmerman, Asst. U. S. Atty., Billings, Mont., for plaintiff.

Ralph T. Randono, Great Falls, Mont., for defendant.

## MEMORANDUM

HATFIELD, District Judge.

The defendant was indicted on September 25, 1981 for two counts of theft in violation of 18 U.S.C. §§ 1153 and 661 and one count of illegal possession of a controlled substance in violation of 21 U.S.C. § 841(a)(1). The defendant subsequently filed a motion to suppress, seeking to exclude from introduction into evidence, certain items seized from his residence on August 11, 1981 and August 12, 1981 by an authority of the Fort Belknap Police Department and an agent of the Federal Bureau of Investigation.

The defendant contends that the items at issue were seized in violation of Rule 41(a) of the Federal Rules of Criminal Procedure and the Fourth Amendment to the United States Constitution. A hearing on the matter was held on November 16, 1981.

## I.

On August 10, 1981, Tom and Warren Taylor discovered that certain items had allegedly been taken from their farm. On August 11, 1981 these same individuals contacted Edward Halver, the Chief of Police for the Fort Belknap Indian Reservation and informed him that they saw one of the items allegedly stolen near the residence of the defendant, which was located within the Fort Belknap Reservation. Chief Halver immediately contacted James Wixson of the Federal Bureau of Investigation. Chief Halver, Agent Wixson and other officers of the Fort Belknap Tribal Police went to the residence of the Taylors and obtained descriptions of the items allegedly stolen. These same individuals then went to the residence of the defendant.

Upon their approach to the defendant's residence, the law enforcement agents saw numerous items matching the description of the stolen items provided by the Taylors; specifically, they observed a Briggs and Stratton gasoline motor, a jack, a log chain and an aluminum ladder. At this time, the defendant's wife appeared, and refused the agents' request to search the premises.

While remaining on the defendant's property, the agents summoned the Taylors, who subsequently came to the defendant's residence and confirmed that the items were those allegedly stolen. Thereafter, Chief Halver and Agent Wixson immediately contacted the Tribal Judge of the Fort Belknap Indian Reservation and obtained two warrants (hereinafter warrants A and B) authorizing them to conduct a search of the defendant's premises and vehicle. The tribal police officers who had accompanied Halver and Wixson remained on the defendant's premises until Halver and Wixson returned with the warrants.

On the following day, three other warrants (warrants C, D and E) were obtained by Chief Halver and Agent Wixson to search defendant's property for marijuana plants (warrant C), other stolen property (warrant D) and a deer carcass (warrant E), all of which were observed by Chief Halver and Agent Wixson while they were executing search warrant A.

The defendant contends that the involvement of Agent Wixson made the search one which was federal in nature, hence mandating compliance with the proscriptions of Rule 41(a). The defendant maintains that since the warrants were issued by the Fort Belknap Tribal Judge, there was non-compliance with Rule 41(a), and the evidence seized pursuant to those warrants must be suppressed.

The government agrees that there was significant involvement of the federal government mandating compliance with Rule 41(a). The government further concedes that Rule 41(a) was not complied with since the Fort Belknap Tribal Court is not a court authorized to issue a federal search warrant under Rule 41(a). However, the government submits that the suppression should be limited to the items found after the officers' initial entry on the defendant's premises since the items of evidence which they observed at the time of the initial entry would still be admissible under the "plain view" doctrine.

## II.

Rule 41(a) of the Federal Rules of Criminal Procedure provides:

A search warrant authorized by this rule may be issued by a federal magistrate or a judge of a state court of record within the district wherein the property or person sought is located, upon request of a federal law enforcement officer or an attorney for the government.

Whether Rule 41(a) is applicable to a particular search is dependent on whether the search may be categorized as "federal" in nature. A search must be deemed a federal search if a federal official had "a hand in it". *Navarro v. United States*, 400 F.2d 315 at 317 (5th Cir. 1968). Therefore, the decisive factor is the extent of involvement by a federal official in the total enterprise of securing and selecting evidence.

In the present case, a federal official (*i.e.,* Agent Wixson) was involved in the search at issue from its very inception. Therefore, this court concludes that the search was a "federal" search.

## III.

Authority to issue federal search warrants exists only insofar as granted by the Federal Rules of Criminal Procedure and no further. *Navarro v. United States*, 400 F.2d at 319. Rule 41(a) authorizes federal magistrates or judges of state courts of record to issue federal search warrants. It is undisputed that the warrants at issue in the present case were not issued by a federal magistrate or a judge of a state court of record, but by the Judge of the Fort Belknap Tribal Court.

The question of whether a particular court is a state court of record is to be determined by state law. *United States v. Hanson*, 469 F.2d 1375 (4th Cir. 1972). In the State of Montana, the Supreme Court, the district courts, the municipal courts, and the court of impeachment are recognized as courts of record. § 3–1–102 Montana Code Annotated (1979). It is obvious that the Fort Belknap Tribal Court is not a state court of record and therefore is not authorized to issue a federal search warrant under Rule 41(a). As such, any evidence obtained pursuant to a search warrant issued by that court is inadmissible in a federal prosecution. *See, United States v. Hanson, supra; United States v. Passero*, 385 F.Supp. 654 (D.Mass.1974).

## IV.

The government seeks to impress upon this court that even if the warrants at issue are found to fail because their issuance was invalid under Rule 41(a), suppression of the evidence seized should not be extended to those items observed by Chief Halver and Agent Wixson when they were on the de-

**754**

fendant's premises in the first instance. The government maintains that since the agents were legitimately on the premises, the items they saw fall within the "plain view" doctrine, and as such were subject to warrantless seizure. Although the objects were not immediately seized, but were seized after the invalid search warrant was obtained, the government maintains the validity of the seizure of the stolen objects observed in plain view is not negated.

Disposition of the issue presented requires clarification of what this court perceives as the issue which must actually be addressed. Whether the objects at issue were subject to warrantless seizure is solely a Fourth Amendment question. If it is determined that under the proscriptions of the Fourth Amendment the objects were subject to a warrantless seizure, the fact that the search warrant obtained was invalid under Rule 41(a) of the Federal Rules of Criminal Procedure is irrelevant. Rule 41(a) comes into play only if a warrant was required for the seizure to be legitimate.

█ The "plain view" doctrine as espoused in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1970), sets forth the circumstances under which an immediate warrantless seizure of objects observed by law enforcement officers, after a legitimate intrusion into activities or areas as to which there is a reasonable expectation of privacy, is justified. The "plain view" doctrine is applicable when the evidence was discovered inadvertently, the incriminating nature of the evidence was immediately apparent, and exigent circumstances existed. *Id.* at 464–473, 91 S.Ct. at 2037–2042. It is noted in this regard that the Supreme Court in *Coolidge* specifically recognized that the inadvertency requirement does not apply to stolen objects. 403 U.S. at 464–473, 91 S.Ct. at 2037–2042.[1]

Critical to the application of the "plain view" doctrine is that the initial intrusion must be justified. *Id.* at 467, 91 S.Ct. at 2038. However, the plain view doctrine does not require that an officer's presence at a vantage point from which he observes evidence must be justified by warrant to search or by "hot pursuit" or the search incident to arrest rationale; rather, a legitimate reason for the officer's presence unconnected with a search against a defendant will suffice to legitimize the officer's presence at the vantage point. *Id.* at 467, 91 S.Ct. at 2038. Thus, the "plain view" doctrine has been applied where a police officer is not searching but nonetheless inadvertently comes across an incriminating object. *Id.* at 466, 91 S.Ct. at 2038.

In determining the propriety of the application of the "plain view" doctrine to the factual situation now before this court, it must first be determined whether the initial intrusion of Chief Halver and Agent Wixson upon the property of the defendant was justified or whether it was tantamount to a search.

█ It is firmly established that a police officer who in the performance of his duty enters upon private property to ask preliminary questions of the occupants thereof does not commit an illegal search. *United States v. Hersh*, 464 F.2d 228 (9th Cir. 1972); *Davis v. United States*, 327 F.2d 301 (9th Cir. 1964). In *Davis* the Court considered any police activity which provided an officer with a legitimate purpose, including investigation, as sufficient reason for walking up to the front door of a private home. The Court emphasized that the time of day, coupled with the openness of the officer's approach to defendant's doorway, ruled out the possible danger to their persons and served to establish the reasonableness of their action. Therefore, the Court in *Davis* upheld the warrantless seizure of

---

**1.** In *Coolidge,* Judge Stewart intimated that the "inadvertent discovery" requirement of the "plain view" doctrine does not apply to the seizure of contraband, stolen objects, or dangerous objects. Although it may be unclear on what basis the exception for stolen objects can be explained, *see*, LaFave, W., "Warrantless

Searches and the Supreme Court: Further Ventures Into the Quagmire", 8 Crim.L.Bul. 9, this court chooses to rely on what it perceives as a necessary exception. Clarification as to the appropriate application of the "inadvertent discovery" limitation as a whole, must emanate from the Supreme Court.

contraband which was observed by officers after such a reasonable intrusion.

Critical to the Court's rationale in *Davis* was the intent of the officers. The intrusion in *Davis* was made with the purpose of asking questions and not with the intent to find contraband or to make an arrest. Therefore, the intent of the officers, established from the surrounding circumstances, was the critical factor. *Cf. United States v. Curran*, 498 F.2d 30 (9th Cir. 1974).

■ A review of the surrounding circumstances leading to the entry of the defendant's property in the present case, convinces this court that the entry was legitimate. The entry was in a reasonable manner for the purpose of asking investigatory questions and not with the intent to search or make an arrest. The fact that certain stolen objects fell within the plain view of the officers does not serve to make this legitimate entry an unlawful search. In this context, it is clear that the evidence which was in plain view should not be regarded as having been discovered through a search.

Given the validity of the initial intrusion, the other requirements necessary for reliance on the "plain view" doctrine were satisfied at the time of the initial intrusion. First, the inadvertency requirement is inapplicable since the objects were stolen.[2] Second, the incriminating nature of the objects was immediately present since the agents knew their exact description. Finally, the necessary exigent circumstances existed.[3] It is evident that at the time of the initial intrusion, the stolen objects observed in plain sight were subject to seizure and properly admissible into evidence. *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

Although the objects at issue were subject to seizure under the "plain view" doctrine at the time they were first observed by the law enforcement agents, the fact that they were not seized at that time but later, after an invalid search warrant had been obtained, raises additional issues. The defendant contends that at the time of the seizure, the requirements of the plain view doctrine were no longer satisfied. Specifically, the defendant submits that the return of the agents with the warrant represents an unjustified intrusion, since they were acting under authority of an invalid warrant. Secondly, the defendant submits that at the time of the subsequent intrusion, the inadvertency requirement of *Coolidge* was not satisfied.

As previously noted, the Supreme Court specifically recognized in *Coolidge* that the inadvertence requirement does not apply to stolen objects.[4] Therefore, defendant's contention that the "plain view" doctrine is inapplicable because the law enforcement agents knew, at the time of the execution of the invalid warrants, that the objects were present, will not serve as the basis of rejecting the application of that doctrine in the present situation.

Whether the seizure at issue is legitimate under the "plain view" doctrine is dependent on whether the defendant's proposition, that the event which transpired (*i.e.*, return of the agents with an invalid warrant) represents an unjustified intrusion of defendant's premises is correct. It is the conclusion of this court that the defendant's proposition must be rejected.

Assuming the return of the agents with the warrant is viewed as an intrusion of defendant's premises, distinct from the initial intrusion, it appears to this court that the intrusion would nevertheless have been legitimate. If the subsequent intrusion is viewed in isolation of the prior events, the conclusion may well be that the intrusion was not legitimate, and hence the "plain view" doctrine inapplicable. However, it is the conclusion of this court that the Fourth Amendment does not mandate that the sub-

---

**2.** *See* footnote 1, *supra.*

**3.** The possible loss of evidence is recognized as an "exigent circumstance" sufficient to justify a warrantless seizure. *United States v. Gray*, 626 F.2d 102, 105 (9th Cir. 1980); *cf. United*

States v. Botero, 589 F.2d 430, 432 (9th Cir. 1978), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979).

**4.** *See* footnote 1, *supra.*

sequent intrusion be viewed in isolation of prior events. Rather, the entire incident must be viewed as a whole.

An analysis of the events that transpired reveals that the actions of the law enforcement agents were designed to afford the defendant full protection of his Fourth Amendment rights. Although the agents could have made a warrantless seizure of the stolen items in plain view at the time of their initial intrusion, they opted instead to take the added precautionary measure of securing a search warrant. The fact that the warrant secured was technically invalid under federal statutory law, does not diminish the reasonableness of the agents' actions. It is indeed ironic that the defendant should now be heard to complain of actions designed to respect his Fourth Amendment rights to the fullest extent.

The justification to seize the stolen objects when the law enforcement agents observed them in plain view at the time of their initial, legitimate intrusion of the defendant's premises was not dissipated by their further precautionary attempt to obtain a warrant. This conclusion is consistent with the Supreme Court's rationale for the validity of the "plain view" exception to the warrant requirement.[5] First, the initial intrusion was justified by an extraneous valid reason for the law enforcement agents' presence. Second, the seizure, being limited to those objects which were in plain view, does not convert the search into a general or exploratory one. Finally, the principles of the Fourth Amendment would not be fostered by a decision that the seizure at issue was invalid. If it is generally true that Fourth Amendment values are best served by having advance judicial approval of searches and seizures, then to negate the validity of the seizure in the present case runs contrary to that principle, since it would have the anomalous result of discouraging law enforcement officers from attempting to secure such approval in fear of jeopardizing a seizure which would otherwise be valid under the "plain view" doctrine.

Viewed in its entirety, the incident does not represent one in which the defendant's Fourth Amendment rights were violated. The defendant cannot claim a Fourth Amendment violation predicated on actions of law enforcement agents which were designed to protect those rights. The situation is clearly distinct from that in which law enforcement personnel conduct an investigatory search in the first instance, under the guise of the "plain view" doctrine. Suppression in the latter situation is clearly mandated by the Fourth Amendment.

---

5. The Supreme Court stated in *Coolidge*:

The rationale for the "plain view" exception is evident if we keep in mind the two distinct constitutional protections served by the warrant requirement. First, the magistrate's scrutiny is intended to eliminate altogether searches not based on probable cause. The premise here is that *any* intrusion in the way of search or seizure is an evil, so that no intrusion at all is justified without a careful prior determination of necessity. *See, e.g., McDonald v. United States*, 335 U.S. 451 [69 S.Ct. 191, 93 L.Ed. 153]; *Warden v. Hayden*, 387 U.S. 294 [87 S.Ct. 1642, 18 L.Ed.2d 782]; *Katz v. United States*, 389 U.S. 347 [88 S.Ct. 507, 19 L.Ed.2d 576]; *Chimel v. California*, 395 U.S. [752] at 761–762 [89 S.Ct. 2034, 2039, 23 L.Ed.2d 685]. The second, distinct objective is that those searches deemed necessary should be as limited as possible. Here, the specific evil is the "general warrant" abhorred by the colonists, and the problem is not that of intrusion *per se*, but of a general, exploratory rummaging in a person's belongings. *See, e.g., Boyd v. United States*, 116 U.S. [616] at 624–630 [6 S.Ct. 524 at 528–532, 29 L.Ed. 746]; *Marron v. United States*, 275 U.S. 192, 195–196 [48 S.Ct. 74, 75, 72 L.Ed. 231]; *Stanford v. Texas*, 379 U.S. 476 [85 S.Ct. 506, 13 L.Ed.2d 431]. The warrant accomplishes this second objective by requiring a "particular description" of the things to be seized. The "plain view" doctrine is not in conflict with the first objective because plain view does not occur until a search is in progress. In each case, this initial intrusion is justified by a warrant or by an exception such as "hot pursuit" or search incident to a lawful arrest, or by an extraneous valid reason for the officer's presence. And, given the initial intrusion, the seizure of an object in plain view is consistent with the second objective, since it does not convert the search into a general or exploratory one. As against the minor peril to Fourth Amendment protections, there is a major gain in effective law enforcement. 403 U.S. at 467, 91 S.Ct. at 2038.

However, in the present situation, the validity of the initial intrusion must be extended to the subsequent entry of defendant's premises under the factual circumstances presented.

A more immediate reason in support of the application of the "plain view" doctrine in the present situation, is the fact that the law enforcement agents never terminated their initial valid intrusion, prior to seizure of the objects at issue. From the time of the initial intrusion until the time of the seizure, at least one of the agents remained on the premises. The return of the other agents with a warrant does not represent a distinct, unjustified intrusion negating the application of the "plain view" doctrine as to those objects observed in plain view at the time of the initial intrusion.

An appropriate order shall issue.